ed to the Commanding Officer at Fort Myer a letter notifying him that trash from Fort Myer might be disposed of in the County incinerator upon the payment of $1.00 per ton. Plaintiff complains that this was not called to its attention, and that the failure to do so constituted the withholding of material information amounting to a misrepresentation.

It is clear that this position is untenable. In the first place, plaintiff's bid was submitted the day before Arlington County's letter was mailed to the Commanding Officer; and, further, it is almost impossible that the Commanding Officer should have received this letter before the bids were opened, it having been mailed on the day the bids were opened; and certainly his subordinate, the Sanitary Engineer, was not apprized of it until thereafter. Nor does the proof show that he had knowledge of it prior to awarding the contract to plaintiff.

But, whether he had knowledge of it or not is really immaterial, because it is not shown that the contracting officer knew that plaintiff meant to dispose of the trash through this incinerator, and, even if he had known it, he was not called upon to apprize plaintiff of the cost of doing so, because the sole responsibility for disposing of the trash was on the plaintiff, and the contract made it plaintiff's duty to investigate conditions, including the cost of disposing of it. If plaintiff wanted to dispose of it through the Arlington County incinerator, it was obliged to ascertain the possibility thereof and the cost thereof. The contracting officer knew this and had a right to assume that plaintiff had made the necessary investigation and had ascertained the cost of doing so.

There is no basis for recovery by plaintiff, and its petition is accordingly dismissed.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.

**WILSON & CO., Inc., a Corporation,**

v.

**The UNITED STATES.**

No. 327–54.

United States Court of Claims.
Jan. 31, 1956.

Louis R. Simpson, Chicago, Ill., for plaintiff. Howard C. Parson, Chicago, Ill., was on the briefs.

Lino A. Graglia, New York City, with whom was Asst. Atty. Gen. Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sold canned sliced bacon to the Government for the Army. The Army deducted, from what it owed the plaintiff for the bacon, the sum of $11,318.17 which, it claimed, the plaintiff owed the Government in connection with a prior sale of canned shortening. The transaction really involved in this litigation is, then, the one concerning the shortening.

Under the shortening contract the plaintiff agreed to furnish the Army some two million pounds of shortening, packed in 35-pound cans, each can enclosed in a nailed wooden box. The Government says in its brief that the specifications of the contract stated that this kind of crating was required because the shortening was being packed for overseas shipment. This provision of the specifications is not in the record, but the plaintiff in its reply brief does not contradict the statement, and we take it to be true. The plaintiff was to make delivery F. O. B. cars at the plaintiff's plant at Chattanooga, Tennessee, for shipment to the Army's New Cumberland, Pennsylvania, General Depot.

When some 30,000 cans of the shortening had arrived at New Cumberland, the Army discovered in a routine spot inspection of the interior of the boxes containing the cans, that some of the cans had been punctured by nails driven to fasten down the tops of the boxes. It was not possible to learn how many of the cans had been thus damaged except by removing the top of each of the 30,000 boxes. The Army notified the plaintiff of the situation and requested the plaintiff to furnish, at the New Cumberland Depot, the labor to inspect, remove and replace all nail-punctured cans, or if it did not furnish the labor, to be responsible for the cost of the work.

The plaintiff rejected the Army's request, saying that it would do no more than to replace each bad can of shortening discovered, with a good can. The Army opened all the boxes, found that 1003 cans had been punctured, and billed the plaintiff for $11,318.17, the cost of the work. The plaintiff replaced the 1003 cans of shortening.

The plaintiff disclaims responsibility, pointing to the contractual provision that "if Government inspection or test is made at a point other than the premises of the contractor or a subcontractor, it shall be at the expense of the Government." The Government points to Paragraph 5(a) of the General Provisions of the contract which says "All supplies * * * shall be subject to inspection and test by the Government, to the extent practicable at all times and places * * *." The Government points also to Paragraph 25 of the General Provisions of the contract, which says:

"If supplies which are improperly marked, packed, or crated are received, the Government shall have the option, notwithstanding any of the provisions of the Inspection Clause of this contract, to accept such supplies and to proceed with remarking, repacking, and recrating them without advance notice to the contractor. In the event of such action, the Contractor agrees to pay charges for such remarking, repacking, or recrating computed as follows:

"a. Direct Charges:

&ast; &ast; &ast; &ast; &ast; &ast;

"(2) Packing and Crating Charges:

"(a) The cost of labor and material expended.

&ast; &ast; &ast; &ast; &ast; &ast;

The plaintiff says that this provision, if applicable at all, would cover only the 1003 cans that were improperly crated, and not the others which turned out to be properly crated.

We see no merit in the plaintiff's position. Because of the negligence of its workmen, it shipped to the Army 30,000 cans of material, the whole lot of which was, in the circumstances, unfit for shipment overseas, the purpose for which it was bought. It would have been imprudent for the Army to have incurred the

cost and used the shipping space to send these boxes overseas, knowing that at least a considerable number of them contained unusable material. It had no way of knowing that a large proportion of the ones which it might send to a particular destination would not turn out to be unusable. It was in no way at fault for not having discovered the defects by an earlier inspection. It would take strong language of disclaimer to permit a seller, with impunity, to palm off on a buyer a lot of goods which the buyer could not use for the purpose for which he bought them without taking each unit out of its nailed box to find out whether it was fit for use. If a seller, because of the negligence of his employees, issued such goods and then refused to bear the expense of making the goods usable, he would not be able to sell any more goods to that customer.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

---

**William H. HEFFERNAN, Jr.,**

v.

**The UNITED STATES.**

**No. 313-53.**

United States Court of Claims.
Jan. 31, 1956.

William H. Heffernan, Jr., pro se.

Edgar H. Brenner, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff, an employee in the classified service, sues to recover pay which he alleges is due him as a result of an illegal demotion. Defendant has answered and moved for summary judgment.

Plaintiff, a veteran of World War I, alleges that he was illegally demoted from Quarterman Machinist to Leadingman Machinist at the Naval Underwater Ordnance Station at Newport, Rhode